UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Terry A. Putnam,
    Claimant

    v.                               Civil No. 10-cv-371-SM
                                       Opinion No. 2011 DNH 123

Michael J. Astrue, Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), claimant, Terry Putnam, moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act. See 42 U.S.C. § 423. The Commissioner objects and moves for an order affirming his decision. For the reasons discussed below, claimant's motion is denied, and the Commissioner's motion is granted.

**Factual Background**

I.   Procedural History.

In 2008, claimant filed an application for Disability Insurance Benefits, alleging that he had been unable to work since January 1, 1998, due to knee pain (though he also reported memory problems and diabetes). That application was denied and

he requested a hearing before an Administrative Law Judge ("ALJ").

In October of 2010, claimant, his attorney, and a vocational expert ("VE") appeared before an ALJ, who considered claimant's application de novo.  At the hearing, claimant amended the date of his alleged onset of disability to December 31, 2001 (which is also his date last insured).  Two weeks later, the ALJ issued his written decision, concluding that claimant retained the residual functional capacity to perform a range of light work.  Although claimant's limitations precluded him from performing his past relevant work, the ALJ concluded that there was still a significant number of jobs in the national economy that claimant could perform.  Accordingly, the ALJ determined that claimant was not disabled, as that term is defined in the Act, as of his date last insured (December 31, 2001).

Claimant then sought review of the ALJ's decision by the Decision Review Board, which was unable to complete that process during the time allowed.  Admin. Rec. at 1130-32.  Accordingly, the ALJ's denial of claimant's application for benefits became the final decision of the Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this

court, asserting that the ALJ's decision is not supported by
substantial evidence and seeking a judicial determination that he
was disabled within the meaning of the Act prior to his date last
insured.  He then filed a "Motion for Order Reversing Decision of
the Commissioner" (document no. 9).  In response, the
Commissioner filed a "Motion for Order Affirming the Decision of
the Commissioner" (document no. 10).  Those motions are pending.


II.  Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have
submitted a statement of stipulated facts which, because it is
part of the court's record (document no. 11), need not be
recounted in this opinion.  Those facts relevant to the
disposition of this matter are discussed as appropriate.


**Standard of Review**

I.  "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  Factual findings and credibility
determinations made by the Commissioner are conclusive if

supported by substantial evidence.  <u>See</u> 42 U.S.C. § 405(g).  <u>See</u> <u>also</u> <u>Irlanda Ortiz v. Secretary of Health & Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991) (holding that it is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts").  Consequently, provided the ALJ's findings are properly supported, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  <u>See, e.g.</u>, <u>Tsarelka v.</u> <u>Secretary of Health & Human Services</u>, 842 F.2d 529, 535 (1st Cir. 1988); <u>Rodriquez v. Secretary of Health & Human Services</u>, 647 F.2d 218, 222 (1st Cir. 1981).

     Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  <u>Consolo v. Federal</u> <u>Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).  <u>See also</u> <u>Richardson</u> <u>v. Perales</u>, 402 U.S. 389, 401 (1971).

4

II.  <u>The Parties' Respective Burdens</u>.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work.  <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985); <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform.  <u>See</u> <u>Vazquez v. Secretary of Health & Human Services</u>, 683 F.2d 1, 2 (1st Cir. 1982).  <u>See also</u> 20 C.F.R. § 404.1512(g).

In evaluating a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

> (1)   whether the claimant is engaged in substantial gainful activity;
>
> (2)   whether the claimant has a severe impairment;
>
> (3)   whether the impairment meets or equals a listed impairment;
>
> (4)   whether the impairment prevents the claimant from performing past relevant work; and
>
> (5)   whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his

> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).


With those principles in mind, the court reviews claimant's

motion to reverse and the Commissioner's motion to affirm his

decision.


## Discussion

I.   <u>Background - The ALJ's Findings</u>.

In concluding that claimant was not disabled within the

meaning of the Act, the ALJ properly employed the mandatory five-

step sequential evaluation process described in 20 C.F.R.

§ 404.1520(a)(4).  Accordingly, he first determined that claimant

had not been engaged in substantial gainful employment since his

alleged onset of disability and his date last insured: December

31, 2001.  Administrative Record ("Admin. Rec.") at 8.  Next, he

concluded that claimant suffers from the following severe

impairment: "right knee injury."  <u>Id</u>.  The ALJ also acknowledged

claimant's history of diabetes, substance abuse, and a mild

7

stroke.  But, he concluded that none was a "severe impairment," as defined in the pertinent regulations.  And, as to claimant's knee injury, the ALJ determined that it did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1 – in particular, Listing § 1.02, describing major joint dysfunction.  Admin. Rec. at 9.  Claimant does not challenge any of those findings.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of a range of light work.[1]  He noted, however, that claimant can stand and walk for only a total of one hour each day, in increments of 15 minutes; he cannot operate foot controls with his right foot; he cannot climb ladders, ropes, or scaffolds, nor can he kneel or crawl; and, finally, he can stoop, balance,

---

[2]     "RFC is what an individual can still do despite his or her functional limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  Social Security Ruling ("SSR"), 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

crouch, and climb ramps and stairs only occasionally.  Admin.
Rec. at 9.  In light of those restrictions, the ALJ concluded
that claimant was not capable of returning to his prior job as a
truck driver.[2]  Id. at 11.

Finally, the ALJ considered whether there were any jobs in
the national economy that claimant might perform.  Relying upon
the testimony of the vocational expert, the ALJ concluded that,
notwithstanding claimant's exertional and non-exertional
limitations, he "was capable of making a successful adjustment to
other work that existed in significant numbers in the national
economy."  Id. at 12.  Consequently, the ALJ concluded that
claimant was not "disabled," as that term is defined in the Act,
at any time prior to December 31, 2001, his date last insured.

In support of his motion to reverse the decision of the
Commissioner, claimant advances the following four arguments:
(1) the ALJ adopted an RFC that was not consistent with light
work; (2) the vocational expert's testimony about available jobs

---

[2]     Actually, Mr. Putnam was the owner and operator of a
recycling business.  But, because the Dictionary of Occupational
Titles does not list that as a specific job title, the vocational
expert concluded that "truck driver" most closely matched the
exertional and non-exertional requirements of claimant's past
relevant work.  See Admin. Rec. at 38-39.

that claimant could perform was inconsistent with the Dictionary
of Occupational Titles; (3) the ALJ's reliance on two <u>sedentary</u>
jobs cited by the vocational expert was misplaced and he made
insufficient inquiry of the VE to make certain claimant could
actually perform those jobs; and (4) the ALJ failed to properly
address and credit the opinions of claimant's treating physician.

II.   <u>Claimant's Assertions of Error</u>.

 A. Residual Functional Capacity Determination.

 Claimant asserts that the ALJ's determination that he could
stand and walk for up to one hour each day, but only in
increments of 15 minutes, is inconsistent with the conclusion
that claimant could perform light work.  In support of that
argument, claimant points to various regulations and Social
Security Rulings ("SSR's") that describe light work as involving
a fairly substantial amount of standing and walking throughout
the work day.  <u>See, e.g.</u>, 20 C.F.R. § 404.1567(b).

 Claimant's point is a fair one and it is clear that he
cannot perform the <u>full range</u> of light work, given the limitation
on his ability to walk and stand.  But, as the Commissioner
points out, claimant's inability to perform the full range of
light work does not compel the conclusion that he is only capable

10

of less physically demanding (i.e., sedentary) work, nor does it compel the conclusion that he is disabled.  See, e.g., Templeton v. Comm'r of Social Security, 215 Fed. Appx. 458, 463 (6th Cir. 2007) (rejecting the proposition that simply because a claimant cannot perform the full range of light work, he must necessarily be deemed capable of performing only sedentary work).  When, as here, a claimant cannot perform the full range of light work and the ALJ concludes that his non-exertional limitations significantly erode the otherwise applicable job base, the ALJ must normally consult a vocational expert to determine whether, notwithstanding those limitations, there are still jobs in the national economy that the claimant can perform.  See generally Heggarty v. Sullivan, 947 F.2d 990, 995-96 (1st Cir. 1991).  That is precisely what the ALJ did in this case, and the court can discern no error.

B.   Jobs Cited by the Vocational Expert.

Next, claimant asserts that the jobs identified by the vocational expert as examples of those that claimant could still perform are inconsistent with the ALJ's RFC finding.  That is to say, the jobs identified by the vocational expert, at least as described in the Dictionary of Occupational Titles ("DOT"), require more standing and walking than claimant is capable of

11

performing.  And, says claimant, to the extent the vocational
expert attempted to explain the differences between her opinions
and the information contained in the DOT, those explanations were
insufficient.

The four jobs identified by the vocational expert are
defined, categorically, as involving "light work."

> Light work involves lifting no more than 20 pounds at a
> time with frequent lifting or carrying of objects
> weighing up to 10 pounds.  Even though the weight
> lifted may be very little, <u>a job is in this category
> when it requires a good deal of walking or standing</u>, or
> when it involves sitting most of the time with some
> pushing and pulling of arm or leg controls.  To be
> considered capable of performing a full or wide range
> of light work, you must have the ability to do
> substantially all of these activities.  If someone can
> do light work, we determine that he or she can also do
> sedentary work, unless there are additional limiting
> factors such as loss of fine dexterity or inability to
> sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis supplied).

Not surprisingly, claimant focuses on the highlighted
language, saying that given his restricted RFC, he cannot perform
any jobs that require "a good deal of walking or standing."  But,
the vocational expert recognized that fact and explained that,
notwithstanding their characterization as involving "light" work,

the jobs she identified actually involved only a small amount of walking and standing.  <u>See</u> Admin. Rec. at 43-46.  And, she explained the inconsistency between her testimony and the job descriptions set forth in the DOT as being "based on [her] knowledge of the way the jobs are performed, from working with individuals with varied work backgrounds, and from doing job placement with individuals."  <u>Id</u>. at 45.  Additionally, when pressed by claimant's counsel about the job of "storage facility rental clerk," the vocational expert explained that she had conducted a job analysis and, therefore, understood that (at least in some situations) the job requires less than two hours of standing and walking per day.  <u>Id</u>. at 45-46.  No more was necessary, and the ALJ was entitled to rely upon the VE's expertise in concluding that claimant was capable of performing the specified jobs.  <u>See generally</u> SSR 00-4p, <u>Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704, at *2 (December 4, 2000) ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a <u>reasonable explanation</u> for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.") (emphasis supplied).  <u>See also</u> <u>Barker v. Astrue</u>, 2010

13

WL 2680532, at *4 (D. Me. June 29, 2010) (collecting cases and
noting that courts construing the requirements of SSR 00-4p have
concluded that "a vocational expert's testimony that, in his or
her experience, a job is performed differently than described in
the DOT, constitutes a 'reasonable explanation'").

In light of the foregoing, the court need not address
claimant's assertions of error concerning the sedentary jobs
considered by the ALJ.  Because the ALJ's determination that
claimant could perform the "light work" jobs identified by the VE
is supported by substantial evidence, even if there had been an
error concerning the sedentary jobs (and it is not clear that
there was), it would have been harmless.

C.   Opinions of Claimant's Treating Physician.

Finally, claimant asserts that the ALJ erred by failing to
credit his treating physician's opinion that he "could never work
even a part time job due to [his degenerative joint disease],"
Admin. Rec. at 1129, and by neglecting to account for postural
and manipulative limitations mentioned by his treating physician.
Again, however, the court can discern no errors in the ALJ's
decision which would warrant reversal or remand.

14

On February 26, 2010, Dr. Donald Bernard, claimant's treating physician, completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)." Admin. Rec. at 1125-28.  In it, he expressed the opinion that claimant could: (a) lift 25 pounds occasionally; (b) lift 10 pounds frequently; (c) stand and/or walk for less than 2 hours in an 8-hour workday; and (d) never climb, balance, kneel, crouch, crawl, or stoop. Dr. Bernard also opined that while claimant was "limited" in his ability to "handle" (gross manipulation), he was unlimited in his ability to reach, feel, and finger (fine manipulation). Additionally, Dr. Bernard attached a letter to that form, in which he stated:

> I have reviewed Mr. Terry Putnam's case today.  I have cared for this patient since before 1999.  His degenerative joint disease progressed over the years to the point of his requiring knee replacement.  Despite the latter he continues to have pain and limited mobility.  He could <u>never</u> work even a part-time job due to these issues.  He has never had a "desk job" and it would be quasi-impossible for transition at his age.

Admin. Rec. at 1129 (emphasis in original).  Understandably, claimant focuses on Dr. Bernard's opinion that he is totally disabled (though Dr. Bernard did not expressly state whether he

15

believed claimant was totally disabled eight years earlier, on or
before his date last insured).[3]

Importantly, however, the ALJ adopted most of Dr. Bernard's
findings with respect to claimant's functional limitations (i.e.,
lifting, carrying, standing/walking, sitting, pushing/pulling,
climbing, kneeling, and crawling).  In those instances when the
ALJ's findings diverged from Dr. Bernard's opinions (i.e.,
balancing, stooping, crouching, climbing stairs, and handling),
the ALJ explained that he was adopting the opinions issued by the
state agency physician.  In fact, even in adopting some opinions
offered by the state agency physician, the ALJ was acting
conservatively, since that doctor concluded that claimant only
suffered from those limitations after June of 2008; prior to that
date (including through claimant's DLI), the state agency
physician concluded that claimant could perform light work.
Admin. Rec. at 165-72.  In support of his decision, the ALJ
stated:

---

[3]     Parenthetically, the court notes that there is no doubt that
Mr. Putnam is currently disabled.  In fact, he is receiving
Supplemental Security Income benefits under the Act.
Accordingly, the question presented in this appeal is not whether
claimant is disabled.  He is.  Instead, the issue before the
court is whether the ALJ sustainably concluded that he was not
disabled on or before December 31, 2001.

As for opinion evidence, I have reviewed and considered the recent opinion of Donald Bernard, MD provided in a medical source statement at Exhibit 10F.  In this statement, he opined that the claimant could never work, even on a part-time basis due to pain and limited mobility.  He indicated that he has treated the claimant since before 1999 and that over time his degenerative joint disease in his knee has progressed to the point of him requiring a knee replacement.  <u>Yet, this statement is largely inconsistent with his own specific functional assessment where he opined the claimant is capable of a limited range of light work</u>. Notably, this assessment is generally consistent with and largely incorporated into the residual functional capacity described above.  I am also persuaded by the State examiner, Jonathan Jaffee, MD who opined the claimant had a light exertional capacity prior to [June of 2008], at which point he suffered an acute worsening of pain, further reducing his functioning.  <u>Thus, while the claimant may be disabled at present, I am unable to find disability through December 31, 2001, the date last insured</u>.

Admin. Rec. at 11 (emphasis supplied)(citations omitted).  The ALJ also pointed out that "in 1999, the claimant closed his recycling business and since that time he has not worked; however, at the hearing the claimant testified that he closed the business largely because of business reasons.  He testified that at the time he closed the business, he was carrying up to 75 pounds, while standing and walking up to two hours each work day."  <u>Id</u>.

17

The ultimate determination as to whether claimant was disabled prior to his date last insured is a matter reserved to the Commissioner, who need not defer to the opinions of a treating physician.  See 20 C.F.R. § 404.1527(e).  See also SSR 96-5p, Medical Source Opinions on Issues Reserved to the Commissioner, 1996 WL 374183 (July 2, 1996).  And, the ALJ adequately explained his reasons for crediting some, but not all, of Dr. Bernard's opinions regarding claimant's exertional and non-exertional limitations.  See generally 20 C.F.R. § 404.1527(d)(2).  See also SSR 96-2p, Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996) Because the ALJ's decision in that regard is supported by substantial evidence in the record, it must be sustained.

### Conclusion

Having carefully reviewed the administrative record (including the testimony of the vocational expert) and the arguments advanced by both the Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled at any time prior to the expiration of his insured status on December 31, 2001.  The ALJ's RFC determination, his reliance on the testimony of the vocational expert, and his explanation for

discounting some of Dr. Bernard's opinions are well-reasoned and well-supported by substantial documentary evidence.

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 9) is denied, and the Commissioner's motion to affirm his decision (document no. 10) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 1, 2011

cc:  Francis M. Jackson, Esq.
     Karen B. Fitzmaurice, Esq.
     Gretchen L. Witt, AUSA

19